```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```
- - - - - - - - - - - - - - - - - - X

J & J SPORTS PRODUCTIONS, INC., as
Broadcast Licensee of the April 8,
2006 MAYWEATHER/JUDAH Program,           REPORT AND
                                         RECOMMENDATION
               Plaintiff,
                                         CV 2006-6525 (CPS)(MDG)

      - against -

GERMAN RESTAURANT & LOUNGE, INC.
d/b/a GERMANS RESTAURANT & BEER
GARDEN a/k/a GERMAN RESTAURANT &
LOUNGE INC.,

               Defendant.

- - - - - - - - - - - - - - - - - - X

Go, United States Magistrate Judge:

    Plaintiff J & J Sports Productions, Inc. ("plaintiff") brought this action under Title 47 of the United States Code alleging that individual defendant Kanaiyalal S. Patel and corporate defendant German Restaurant & Lounge, Inc. ("German" or "defendant") violated sections 553 and 605 by intercepting and displaying to their customers, without plaintiff's authorization, a pay-per-view cable television broadcast. Plaintiff subsequently dismissed its claims against defendant Patel. See ct. doc. 7.

    After entry of default following defendant German's failure to appear or otherwise defend in this action (ct. doc. 9), the Honorable Charles P. Sifton referred plaintiff's motion for

default judgment to me for a report and recommendation as to jurisdiction and damages.

## PERTINENT FACTS

The facts pertinent to determination of this motion are undisputed and are set forth in the complaint ("Compl.") (ct. doc. 1); the June 4, 2007 affidavit of Joseph Gagliardi, President of plaintiff ("Gagliardi Aff.") (ct. doc. 8-2); the June 6, 2007 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") (ct. doc. 8-3); and the April 12, 2006 affidavit of investigator James Russo ("Russo Aff.") (attached as Exhibit D to the Gagliardi Aff.[1]). Defendant did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of California, with its principal place of business located in Campbell, California. Compl. at ¶ 5. Defendant German is alleged to be a New York corporation which conducts business under the names Germans Restaurant & Beer Garden and German Restaurant & Lounge Inc. (collectively "Germans Restaurant") at 109-02 Liberty Avenue, South Richmond Hill, New York. Id. at ¶¶ 10-11.

Plaintiff owns the rights to distribute via closed-circuit

---

[1] Mr. Gagliardi states in his affidavit that investigator Russo's affidavit is attached as Exhibit C. However, Exhibit C contains an affidavit with respect to a different business establishment.

television and encrypted satellite signal the Mayweather/Judah boxing match, including all undercard bouts and the entire television broadcast scheduled for April 8, 2006 (the "boxing match"). Id. at ¶ 15; Gagliardi Aff. at ¶ 3, Exh. A. Plaintiff entered into sublicense agreements with various entities to show the boxing match to their patrons. Compl. at ¶ 16. The broadcast originated as a satellite uplink and was retransmitted to cable and satellite providers via satellite signal. Id. at ¶ 14.

Defendant did not contract with plaintiff, and thus, was not authorized to receive and publish the boxing match. Gagliardi Aff. at ¶ 6. As set forth in his affidavit, investigator James Russo observed the unauthorized public showing of the boxing match at Germans Restaurant to 8 customers. Russo Aff. at 2. Entering the establishment at approximately 11:06 p.m. on April 8, 2006, investigator Russo observed, inter alia, the introduction of the Mayweather/Judah match. Id. at 1.

DISCUSSION

I. Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also

effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. Greyhound, 973 F.2d at 159. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain, 653 F.2d at 65; Directv, Inc. v. Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y. 2003).

II. Determination of Damages

   A. Jurisdiction

As this case arises under federal law, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. In addition, plaintiff properly served the corporate defendant by serving the New York Secretary of State. See ct. doc. 6.

Therefore, this Court has subject matter jurisdiction over this action and personal jurisdiction over defendant.

B. Liability

Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming. Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication ... or assist in receiving any interstate or foreign communication by radio and use such communication for his own benefit or the benefit of another not entitled thereto."

The Second Circuit in Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2d Cir. 1996) ("Sykes II"), held that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions. See also Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002). When certain television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605 apply. Id.

Plaintiff's submissions establish that the corporate

defendant violated sections 553 and 605 of Title 47 by intercepting and receiving the boxing match without authorization. Compl. at ¶¶ 18-19; Russo Aff. at 1-2. Plaintiff had the right to distribute the boxing match, which originated via satellite uplink. Compl. at ¶¶ 15-16; Gagliardi Aff. at ¶ 3, Exh. A. Investigator Russo observed the boxing match being displayed to customers at Germans Restaurant, a business operated by defendant German, even though it had not contracted with plaintiff to do so. Russo Aff. at 1-2. Consequently, this Court finds that defendant German's unlicensed reception and exhibition of the transmissions violated sections 553 and 605 of Title 47.

C. <u>Damages</u>

Plaintiff requests damages pursuant to section 605, rather than section 553. Pl. Mem. at 4. Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553. <u>See</u> <u>Sykes II</u>, 75 F.3d at 127; <u>Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc.</u>, No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible).

Section 605 allows plaintiff to elect to recover either actual damages and lost profits, or statutory damages. <u>See</u> 47 U.S.C. § 605(e)(3)(C)(i). Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000

-6-

for each violation of section 605(a). That section vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just." See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff"). In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." The court is authorized to award enhanced damages of up to $100,000 for each willful violation.

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy. See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative history). The court should therefore also grant damages in an amount which deters future piracy. See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover statutory damages in the amount of $10,000 and enhanced damages of $100,000 for defendant's willful violation of section 605. Pl. Mem. at 7. Some courts presented with sufficient evidence indicating the number of

patrons present at the time of the unauthorized programming have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the event in question. See, e.g., Mama Zee, 2002 WL 2022522, at *3 (awarding $50 per patron), Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same). Other courts have simply assessed a flat damages amount per violation. See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for one-time exhibit of boxing match to about 20 customers); Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000 statutory damages and $5,000 enhanced damages for one-time exhibit of boxing match to 60 customers); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) (awarding $5,000 statutory damages for one-time exhibit of boxing match to 30 customers).

A number of judges in this district have awarded damages based on the number of patrons or the capacity of an establishment multiplied by the residential fee for a pay-per-view broadcast. See, e.g., Kingvision Pay-Per-View Ltd. v. Cazares, No. CV-05-2934, 2006 WL 2086031, at *3-*4 (E.D.N.Y. July

25, 2006) (adopting recommendation of statutory damages award based on $54.95 residential rate for each patron present during broadcast of event); Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damages award of $989.10 based on $54.95 for each of the 19 patrons observed in the establishment); Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on same $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity). Courts using the residential fee reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue. See Bello, 2005 WL 2496062, at *3. Plaintiff states that the residential rate for this broadcast was $54.95. Gagliardi Aff. at ¶ 9(B).

Plaintiff has submitted evidence that 8 customers were present at Germans Restaurant when investigator Russo observed a portion of the boxing match being illegally displayed. See Russo Aff. at 2. I recommend that damages be based on the number of customers in defendant's establishment, rather than total capacity, since the establishment was far from filled during the very short period of time the investigator was present. Since damages based on 8 customers multiplied by the residential rate of $54.95 would equal $439.60, an amount less than the statutory

minimum, I recommend awarding damages against defendant German in the amount of $1,000.

Further, I recommend that the Court award enhanced damages against defendant German. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage. Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)). Since knowledge of infringement may be "actual" or "constructive," it need not be proven directly and can be inferred from the defendant's conduct. See Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992). A defendant's default may also be considered as evidence of willful infringement. See Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006); Peer Int'l Corp. v. Max Music & Ent'mt, No. 03 Civ. 0996, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages. These factors include: "repeated violations over an extended period of

time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

The undisputed facts presented by plaintiff in its complaint and the supporting affidavits clearly establish that Germans Restaurant is a commercial establishment that publicly displayed the Mayweather/Judah boxing match to customers without authorization. Gagliardi Aff. at ¶¶ 6-8; Russo Aff. at 1-2. In its Memorandum of Law in Support of Damages, plaintiff states that "Defendant is a repeat violator of the Federal Communications Law." See Pl. Mem. at 7. However, plaintiff has not submitted any evidence to support that allegation and this Court found that no other actions have been brought against this same defendant in this Court. Nor is there any evidence suggesting that any of the other willfulness factors are present. Nonetheless, plaintiff's submissions suffice to support the inference that on April 8, 2006, German displayed the boxing match for commercial gain in order to attract customers to patronize its establishment. Thus, I find that defendant willfully acted to intercept the match without authorization.

Some courts have awarded enhanced damages equal to three times the amount of damages awarded under section

605(e)(3)(C)(i), particularly in cases involving small commercial establishments.  See Joe Hand Promotions, Inc. v. El Norteno Restaurant Corp., No. 06 CV 1878, 2007 WL 2891016, at *5 (E.D.N.Y. Sept. 28, 2007); Kingvision Pay-Per-View, Ltd. v. Echeverria, No. 06 CV 1266, 2007 WL 595025, at *4 (E.D.N.Y. Feb. 22, 2007); Joe Hand Promotions, Inc. v. West, No. CIV.A.99-0983E(M), 2000 WL 1610666, at *2 (W.D.N.Y. Oct. 25, 2000) (where no special circumstances are shown, a trebling of damages is a "reasonable deterrent against future violations") (quoting Googies Luncheonette, 77 F. Supp. 2d at 490-91).  Accordingly, I recommend awarding enhanced damages of $3,000.

D. Costs

Although plaintiff does not seek attorneys' fees, it requests an award of costs totaling $450.00.  Lonstein Aff. at ¶ 3.  Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable costs be awarded to a prevailing aggrieved party. Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) ("Sykes I").  In support of its request, plaintiff has submitted an affidavit from Julie Cohen Lonstein attesting to the payment of $100.00 in service of process fees and $350.00 in court filing fees.  Lonstein Aff. at ¶ 3.  Since plaintiff's request for fees is reasonable, I recommend that the Court award costs in the amount of $450.00.

CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff $1,000.00 in statutory damages, $3,000.00 in enhanced damages and $450.00 in costs, for a total judgment of $4,450.00 against defendant German Restaurant & Lounge, Inc.

A copy of this report and recommendation is being filed electronically on this date and sent to defendant via federal express. Any objections must be filed with the Clerk of the Court, with a copy to the Honorable Charles P. Sifton, the undersigned and the other party, on or before February 14, 2008. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

Dated:   Brooklyn, New York
         January 25, 2008

                                        /s/
                                        MARILYN D. GO
                                        UNITED STATES MAGISTRATE JUDGE